## CINCINNATI GALVANIZING CO. v. MARQUETTE TOOL & MFG. CO.

Circuit Court of Appeals, Seventh Circuit.
June 5, 1928.

No. 3937.

**1. Patents ⬤═259(1)—Contributory infringement of patent generally presupposes actual infringement.**

Ordinarily there can be no contributory infringement of patent, without actual infringement.

**2. Patents ⬤═328—1,486,746, for power press, held not contributorily infringed by advertisement of die cushion to be used in connection therewith.**

Heisel patent, No. 1,486,746, for power press, *held* not contributorily infringed by advertisement by defendant of pneumatic die cushion, where only use ever made of the cushion in connection with plaintiff's press was by plaintiff.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Patent infringement suit by the Cincinnati Galvanizing Company against the Marquette Tool & Manufacturing Company. From a decree of dismissal, plaintiff appeals. Affirmed.

Walter F. Murray, of Cincinnati, Ohio, for appellant.

Otto R. Barnett, of Chicago, Ill., for appellee.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

PAGE, Circuit Judge. Plaintiff's (appellant's) suit, charging infringement of Heisel patent No. 1,486,746, for power press, was dismissed for want of equity. The allegation of the bill is that defendant "used and caused to be used," and "threatens to continue the use of," the infringing device. Upon the trial, plaintiff limited its claim as follows:

"We are here before your honor purely on a complaint that they [defendant] are aiding and abetting others, urging others, to infringe our patent; they are contributory infringers. * * * What we object to is their advertising in their catalogue that this die cushion can be used in a combination of elements shown on pages 96 and 99 and their advertising that they will supply these die cushions to people who want to use them for that purpose."

[1, 2] Plaintiff's right, on the question of infringement, is just that narrow. Such an advertisement could not support the allegation of use.

The relation of the parties may explain why the advertisements were made. Heisel was an employé of the plaintiff. While trying to work out the practical operation of his press, he encountered serious difficulties that were overcome by using defendant's pneumatic die cushion, made under its Strand patent, No. 1,401,371. Defendant's principal business was making pneumatic die cushions.

The first of the advertisements complained of is a page from defendant's catalogue showing what Heisel says is a cut of a press with the dies of his patent. In it is also shown defendant's pneumatic die cushion. Over the top of the cut is printed, in large letters, "Installation of Type 'G' Marquette Pneumatic Die Cushion." Below the cut is printed instructions about installing and connecting up the pneumatic die cushion, followed by the words:

"Instructions as to details of installation and operation will be given to purchasers for each set of dies and cushions before they are installed and when required will superintend installation and operation without additional charge."

Defendant did not make, sell, or handle dies of any kind. The other advertisement is likewise a page from defendant's catalogue, showing a cut in which are seen defendant's die cushions and what plaintiff says are the dies of his invention. This advertisement evidently relates to installation of the die cushions in the die press.

Counsel quote, as being significant, the following from an advertisement of defendant: "In co-operation with a large press manufacturer, we have designed equipment capable of double drawing, deep difficult shapes such as this in one stroke of the press and shells come out free from cracks and wrinkles."

Whether that advertisement was true or not, the record does not disclose. Whether it related to plaintiff's device, we deem unimportant. It might have related to Schimmelbusch, No. 78,390, or possibly to Stampacchia, No. 601,738. We have not examined those patents closely but note that Heisel's only reply thereto, when his application was rejected on Schimmelbusch, was: "Schimmelbusch of record does not show the movable dies to be carried into engagement with the fixed dies through the agency of the shaft, but uses fluid pressure for this purpose."

Both in oral argument and in its brief counsel stressed this statement: "Plaintiff seeks to get the benefit from its patent by

the superiority and cheapness of the product of the patented machine."

We find no support for that statement in the record. All Heisel said was: "I do not know of anybody besides the plaintiff using the Heisel machine." The purpose of counsel's statement apparently was to indicate that plaintiff was not selling, and did not intend to sell, the Heisel device. So far as appears, the Heisel machine might at all times have been, and may now be, available in the market for purchase and obtainable without infringement.

Ordinarily there can be no contributory infringement without actual infringement. Popular Mechanics Co. v. Brown (C. C. A.) 245 F. 859; Computing Scale Co. v. Toledo Scale Co. (C. C. A.) 279 F. 648, 768. Plaintiff had procured and incorporated in its machine defendant's patented pnuematic die cushion, and we see no act of contributory infringement, or even impropriety, in defendant's advertisements.

Thomson-Houston Elec. Co. v. Ohio Brass Co. (C. C. A.) 80 F. 712, is to be distinguished from this case. There the thing made could not be used except in the combination of the patent. There actual infringing sales were shown; here it is admitted no sales were made. It is also admitted that the pneumatic die cushion was one of the regular products of defendant, and had many uses. The only use ever made of it in connection with plaintiff's press was by plaintiff.

We are of opinion that the decree should be, and it is, affirmed.