## HAZELTINE CORPORATION et al. v. ATWATER KENT MFG. CO.

District Court, E. D. Pennsylvania. July 26, 1929.

No. 3775.

John P. Croasdale, of Philadelphia, Pa., and William H. Davis, of New York City, for plaintiffs.

Ralph B. Evans, Paxson Deeter, and C. D. Ehret, all of Philadelphia, Pa., for defendant.

DICKINSON, District Judge. There are few rights which are so far absolute as that they can be enforced to the limit without running into a wrong to some one else. This is the infringement of a patent suit. A patentee has the undoubted right granted by law to ask for an injunction and for damages against every maker, user, or seller of what has been patented. When, however, as here, the patented thing is made by a manufacturer who sells to jobbers, who in turn sell to dealers, who in their turn sell to users, and the patentee brings suit against every infringer, a very great inequity may be done. The patented thing may relate to a very small part of the business of the infringing manufacturer, but the effect of the institution of a large number of suits against

his customers may easily be to disrupt the whole business of the manufacturer by frightening away his customers, and if the suits are brought by a rival, the charge is sure to be made that the bringing of such a large number of suits has an inequitable in terrorem purpose. This is the charge here made. The plaintiff and defendant had a difference of opinion, the former claiming a patent right which the latter disputed. The defendant was offered a license under royalties, which was declined, the defendant asserting the right to manufacture the patented thing.

The present bill was filed August 5, 1926, for an injunction, etc. Another like suit was brought in the Second circuit, and the trial of the case here was deferred until the Second circuit case was determined. The District Court found for the plaintiff, and this decree was affirmed by a divided court by the Circuit Court of Appeals, but the mandate has been withheld until September next pending a motion for a reargument.

The plaintiff, however, has brought 26 suits in New York against sellers of the patented thing and intends at once to bring other suits in large number. The inevitable consequence has been and will be to play havoc with the whole business of the defendant by creating a panic among its patrons and customers so that they will be deterred from buying anything of the defendant.

A feature of the situation is that the patented thing here has been superseded by a later invention and is now no longer made by the defendant, and is of course not now on sale except to the extent that there is a hold over of the old stock. The practical situation thus presented is that the wrong done to the plaintiff is now at an end and the damage (including profits) can be estimated with approximate exactness.

The defendant has submitted itself to any order the court may make to secure through a bond to the plaintiff the payment of any damages or sum which the plaintiff may have the right to recover. There is thus in sight no practical advantage to the plaintiff in insisting at this time upon its right to press simultaneously a large number of suits against customers of the defendant. The at least possible harm to the defendant and the advantage to its competitors and rivals through the plaintiff pursuing this course is manifest. Under such circumstances the defendant has a grievance and the question becomes one of whether relief, if it is likewise a legal injury, can be accorded without a denial to the plaintiff of its rights. The plaintiff has brought itself within reach of such relief by bringing the present suit in equity. Having made its appeal for equitable relief, it must accept the doctrine that he who asks equity must do equity. Defendant is within asking distance of relief by supplementary pleadings which set up the grievance of which it complains by answer but with the effect of a cross-bill. We are thus brought face to face with the question of whether relief can be given the defendant. We must begin with the fact that the patent rights of the plaintiff have the sanction of a ruling by the courts. It is true that this ruling is subject to appeal, but until reversed it must be treated as the law of the case. Since the plaintiff has been wronged, it has the right to demand redress. Primarily this right must be accorded it whatever the incidental consequences. When, however, redress is sought through an appeal to a chancellor, the complainant subjects itself to the duty of observing all the equitable considerations which arise. The question then becomes whether the redress granted the plaintiff should be so restricted as that injustice will not be done the defendant. The question presents inherent difficulties. The grievance of which the defendant complains is an appealing one, but the legal rights which the plaintiff is proposing to enforce are clear. In every litigation which is worth while two features are presented. One is the principles of law or equity with which the cause concerns itself, or in other words the law of the case; the other is the practical worth-while considerations. The law of the case is that the plaintiff has the right to have all further infringements restrained and to recover damages and profits from every one of the 26,000 dealers who are customers of the defendant and indeed of the uncounted numbers of the users of the patented thing. A most effective restraining order, however, exists in the admitted fact that the patented thing has passed out of use. The nominal situation, of course, still exists that the unsold devices may be sold. So, of course, they may, but there is no prospect that such sales will, damage the plaintiff or yield a profit to the seller. The damages and profits to which the plaintiff has a right are in consequence things of the past, and, as before stated, can be approximately estimated and a sum fixed which would cover all such damages and profits. As a practical course there is no need shown for the plaintiff to do what it is proposing to do and certainly not at this time. This, however, does not lessen the abstract legal rights of the plaintiff. Cases of this kind present the

dilemma of the conflict of the right of a patentee to sue and the right of a defendant to be protected against the abuse of legal process. There is nothing to justify the finding here that the motive of the plaintiff is the bad one of driving away from the defendant its customers, but it cannot be denied that such is, at least measurably, the effect of doing what is proposed to be done. It is undoubtedly a doctrine of the law applicable to tort-feasors that an injured party who has obtained redress from one tort-feasor cannot pursue another for the same damage. The statute, however, gives to a patentee the right to recover the profits which any infringer has received through an infringement. A manufacturer may thus be compelled to disgorge any profits received, measured by the difference between the cost of manufacture and sale and the selling price. By the same token the patentee would have a like claim to the further profits received by a dealer. It is difficult to accept the doctrine that an infringer acquires the rights of a licensee and can confer such rights upon his vendee by paying damages; but when a patentee elects to take the profits of a sale, the doctrine may readily be accepted that he thereby affirms the sale as if made by himself. In another view, however, a dealer who sells a patented thing may himself be an infringer whose profits the patentee may claim.

Whatever divergence of views there may have been on these questions, these views were brought into one by the case of Birdsell v. Shaliol, 112 U. S. 485, 5 S. Ct. 244, 28 L. Ed. 768, the doctrine of which we do not understand to have been modified by Union Tool Co. v. Wilson, 259 U. S. 107, 42 S. Ct. 427, 66 L. Ed. 848. The doctrine is that when the total damage sustained has been paid by one tort-feasor, the damages cannot be duplicated through a recovery against another, but that every infringer of a patent right may be made to give up whatever profits he has derived from the infringement, and that one infringer is not relieved by payment by another infringer, but each is accountable for the profits which he has received. Whether or not a given suit is justified is thus seen to be a question best determined in the light of its special circumstances. A threatened army of suits should undoubtedly be restrained. Whether a limited number have justification as a good-faith enforcement of plaintiff's rights would be disclosed by the suits themselves.

The power of this court to grant the defendant the relief prayed is frankly admitted, and the assurance is loyally given that the plaintiff will observe any order made by this court. None the less the enforcement of an order made by a court should not be made dependent upon the sense of loyalty which the party affected by the order may have toward the court. The plaintiff is within the jurisdiction of this court for a special purpose only, and all its rights should be respected.

The discussion in American School-Furniture Co. v. J. M. Sauder Co. (C. C.) 106 F. 731, is very helpful, and with the views there expressed we are in full accord.

There may be occasion for this court to extend protection to the defendant, but we do not feel constrained at this time to act. Twenty-six suits have been brought in the same district in which the suit establishing the validity of the patent was brought. The court there can afford the defendant effective relief against oppression through the abuse of legal process. If unjustified actions are attempted to be brought in this district, we can give relief. We feel justified in expressing the opinion notwithstanding that volunteered suggestions are usually ignored that this defendant has a real practical grievance in the bringing of many actions against its customers, however free from the intention to harm the plaintiff may be. The plaintiff, of course, has the right to all the damages and profits to which it may be entitled. It has the right to be assured of the payment of what is due it, and to have, if deemed necessary, this assurance fortified by a bond. There would seem to be no difficulty in fixing upon a sum which would cover such claim, and that the need for any litigation beyond the pending suits to determine the rights of the parties could be avoided by a stipulation.

The conclusion we have reached is that the injunction asked for be for the present denied, with leave, however, to the defendant to renew its application for relief if need therefor develops.

A formal order to this effect may be submitted.