## CONMAR PRODUCTS CORPORATION v. TIBONY.

### Civil Action No. 2225.

District Court, E. D. New York.

Nov. 30, 1945.

See also, D.C., 2 F.R.D. 169.

James & Franklin, of New York City, for plaintiff.

J. B. Felshin, of New York City, for defendant.

BYERS, District Judge.

Two defendant's motions are here presented, in connection with the Report of the Special Master filed August 7, 1945, which motions were heard November 7, 1945.

The case went to trial as an inquest by reason of defendant's failure to attend, although by answer filed November 10, 1941, he had pleaded matters concerning the nature of his employment by plaintiff, and his acquisition of knowledge of matters comprehended in the term trade secrets, etc., which could have been appropriately illuminated by his own testimony, and perhaps that of others. .

An interlocutory judgment dated December 2, 1943, declared that the defendant had breached the terms of his written contract of employment by the plaintiff (dated January 4, 1937) in that he had become versed in certain of plaintiff's trade secrets, as contemplated by the contract, but, in violation of its terms, he had imparted them to others; and that in so doing he had contributorily infringed two of the plaintiff's patents, in that he had designed, helped to erect, and helped to operate certain machines for manufacturing slide fasteners.

It is recited in the interlocutory decree, that those matters which were trade secrets at the time defendant entered plaintiff's employ, in September of 1936, were thereafter largely embodied in the following letters patent:

Wintritz, No. 2,201,068, granted May 14, 1940;

Ulrich, No. 2,221,740, granted November 12, 1940.

The said decree provided for an injunction, and for an accounting of profits, etc., and damages to be established before a Special Master therein named, to wit: Thomas J. Byrne, Esq. The report of the latter sets forth that the gains, profits and advantages, on the part of the defendant, demonstrated by the evidence submitted to him, amounted in all to $17,882,91, namely:

From Lamar Slide Fastener Corp. $16,556.62
" Hared Fastener Co. 962.00
" Peak Construction Co. 364.29 $17882.91

That any damages sustained by plaintiff (i.e., loss of business) because of the manufacture and sale of slide fasteners by Lamar (above) were not proved.

The defendant objects to the Master's Report, in that a patent infringement suit brought by this plaintiff against said Lamar Corporation, involving the Wintritz patent, resulted in a consent decree for plaintiff and the granting of a license to Lamar, and the payment by it to the plaintiff of an agreed sum ($15,000.00) as consideration for a general release running to it alone; that such release bars any recovery from this defendant, who must be deemed to be a joint tort-feasor with Lamar.

The defendant seeks to resettle the interlocutory decree and findings, because the contract of employment set forth in the complaint herein is illegal and void, and against public policy, in view of the restrictions which its terms imposed upon the defendant, and therefore no recovery for its breach by him can be justified.

The first contention requires consideration of the nature of the defendant's participation in the Lamar infringement, and the consequences arising from the outcome of the suit against that company, so far as the general release is concerned.

■ That Tibony was properly adjudged to have been a contributory infringer to the Lamar infringement, is not now disputed, but since the adjudication to that effect was upon his default, the subject has been reexamined in light of the generally accepted definition, that contributory infringement is "the intentional aiding of one person by another in the unlawful making, or selling, or using of the patented invention". Henry v. A. B. Dick Co. 224 U.S. 1, at page 33, 32 S.Ct. 364, 373, 56 L.Ed. 645, Ann.Cas.1913D, 880.

■ Clearly the conduct of Tibony in designing and helping to build the Lamar machines is aptly described in the foregoing language, and precedent for so holding is found in Risdon Iron & Locomotive Works v. Trent; C. C., 92 F. 375.

The question of whether his preparation of the designs and assistance in erecting the machines became merged in the making and use of the machines by Lamar, so that there resulted but one body of infringement, composed of diverse elements, does not rise to any level of importance.

■ Assuming, for argument only, that the plaintiff could have joined Tibony as a defendant in the Lamar suit—depending upon his precise relationship to that enterprise—(Cf. Hart Steel Co. v. Railroad Supply Co.; 244 U.S. 294, 37 S.Ct. 506, 61 L.Ed 1148; American Machinery Co. v. Everedy Mach. Co., D. C., 35 F.2d 526, at page 528), but having elected not to do so, it does not follow that Tibony cannot be held separately for his contributory infringement, in this action. No decision is cited by defendant for the proposition that a patentee is required to pursue his remedy against a direct infringer and a contributory infringer in one suit; nor that direct and contributory infringements constitute but one trespass.

It would seem clear in this case that Tibony's contribution to the final achievement of Lamar can well be separated therefrom, upon the theory that Lamar was at liberty to select any design and assistance in the acts of construction that it desired to employ, such as that of Tibony; or equally that of some one else (assuming the existence of another person who had been as completely admitted to the confidential employment of the plaintiff), which means that, while the machines could not be built except from designs and drawings, the latter could have been perfected without ever having been embodied in any mechanical structure; it is true that, unless so availed of, Tibony would not have con-

tributed to the direct infringement, which reflection does not destroy the individual and separate quality of his actions in making the designs and in helping to construct the machines, which is the only subject of this branch of the discussion.

The defendant cites no decision to the effect that a release given to a direct infringer, after suits brought separately against him and also against a contributory infringer, necessarily operates to discharge the latter. His chief reliance is upon Schiff v. Hammond Clock Co., 7 Cir., 69 F.2d 742, in which it was held that the president of the corporate defendant, which he had caused to be organized to practice a deliberate and intentional infringement of plaintiff's patent, was himself personally liable as a direct infringer under facts which allowed of no other decision; and that a release to the corporation inured to his benefit. The defendant asserts that this is a case directly in point. I am unable to see it in that light.

■■ If Tibony had been made a party defendant in the Lamar case, assuming that to have been legally proper, a release to the corporation would have discharged all who had been jointly involved with it in the commission of the trespass, and conceivably that could have included Tibony, but such is not the showing of this record. According to Thomson-Houston Electric Co. v. Ohio Brass Co., 6 Cir., 80 F. 712, at page 721, "all who take part in a trespass, either by actual participation therein or by aiding and abetting it, have been held to be jointly and severally liable for the injury inflicted".

It would follow that a release to one would exculpate all who are jointly liable, but that would not follow as to the several liability. Such was Tibony's in this case.

Then the defendant argues that the release to Lamar in terms discharged it from all claims and demands, etc., based upon any act of infringement of Lamar prior to the date of the agreement (June 1, 1941) as to the Wintritz patent No. 2,201,068 and one other, being the matters comprehended in the suit against Lamar. This means that all direct infringement by Lamar was "erased" according to the defendant, and hence, as of the date of the release, there had been in the past no direct infringement by Lamar to which Tibony could have contributed; and since there cannot be contributory infringement

in the absence of direct infringement, this aspect of the case against Tibony fails.

■ It is not to be questioned that ordinarily there must be a completed direct infringement in order that additionally and separately there may be found infringement contributory thereto. Computing Scale Co. v. Toledo Computing Scale Co., 7 Cir., 279 F. 648; Popular Mechanics Co. v. Brown, 7 Cir., 245 F. 859; Cincinnati Galvanizing Co. v. Marquette Tool & Mfg. Co., 7 Cir., 26 F.2d 593, among others.

■ However, this release does not recite that there never was a direct infringement by Lamar. Indeed there would have been nothing to release, so far as this record shows, unless there had been infringement; and the financial loss to the plaintiff arising therefrom was liquidated at $15,000.00. If, as seems to be the case, the defendant reasons that such an adjustment is the equivalent of an agreement that there never was a direct infringement by Lamar, which would carry with it, in legal effect, an assertion by the plaintiff that there never was a contributory infringement by Tibony, it must be confessed that the basis for the argument has entirely eluded this court.

Concerning the separate responsibility of a manufacturer and a dealer who purchased the infringing device from him, the case of Hazeltine Corporation v. Atwater Kent Mfg. Co., D. C. 34 F.2d 50, is accepted by the defendant as correctly stating the law as to the individual liability of two infringers for the profits respectively established by proof. See page 52. The defendant argues, however, that Lamar and Tibony cannot be considered as several infringers but as only one. The effort has been made to explain why this court cannot yield to that contention. If all damages, as disiguished from profits, had been collected from one tort-feasor, or released, the others would thereby be exonerated, but no damages whatever are deemed to have been proved, nor has it been shown that any have been paid.

■ This subject has been considered on the merits, since the Lamar release was received in evidence before the Master; however, it was not pleaded as an affirmative defense in spite of the requirements of Rule 8(c) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. The court has assumed the

making and granting of a motion to conform the pleadings to the proof, Id. 15(b).

The report of the Master is objected to as to the amount of profits awarded to the plaintiff.

The matters above discussed have to do with the Lamar settlement; it is urged that, as to the Hared Fastener Co. and Peak Construction Co. settlements, the same contentions apply. That which has been written is intended to dispose of those two aspects of the case, and to the same effect.

■ It is also urged that Tibony should be given credit for his income tax payments on the several sums collected by him from these three companies. The Master overruled that contention, and with his conclusion this court agrees.

■ The second aspect of defendant's cause consists in the motion to amend the findings and interlocutory decree so as to include a finding that his employment agreement is in terms contrary to public policy and illegal, because he contracted without limitation not to disclose any information obtained by him while in plaintiff's employ, to any third person without the written consent of plaintiff; and because he also contracted not to assist any third party in any patent litigation against the plaintiff. The contract dated January 4, 1937, is in evidence and should be consulted for its precise terms, but for brevity it may be paraphrased as follows:

The recital is that plaintiff, manufacturer of a variety of products, is endeavoring to improve and develop them, whereby inventions are involved, some of which are protected by patents and others are kept secret, and that the defendant will be brought into intimate contact with the problems, inventions and confidential records, data and secret information of the plaintiff, and that defendant is desirous of being employed by the plaintiff, therefore he agrees to serve plaintiff faithfully and devote his entire time and energy to the plaintiff; that he will not disclose any information obtained by him in the course of his employment to any third person without the written consent of an officer of the plaintiff either during or after his employment; that upon leaving said employ he will not take with him, absent such consent, drawings, blueprints, photographs, samples, models or any other picture or reproduction of products, machines, processes or other developments made or used by plaintiff, and will keep in secrecy and confidence all such matters; that he will disclose and assign to plaintiff all inventions made by him relating to the business of the plaintiff, and will do all things necessary to render this particular subject-matter effective.

Lastly, in the event of patent litigation between plaintiff and any third party, he will assist the former and agrees not to assist the latter, even after leaving plaintiff's employ; and as to the latter, he is to be compensated for time expended in cooperating with plaintiff. The plaintiff has not sought to prove any breach of this provision of the contract.

Plainly this contract is confined by its express terms to the plaintiff's trade secrets and inventions. Disclosure thereof to third persons is the explicit subject of the defendant's negative and precise undertaking, and the breach of that undertaking alone is exposed in this case.

While the words "any information" in Paragraph 2 are broad and unlimited, standing by themselves, the contract is not to be construed solely with reference thereto, but must be taken as a whole, and understood as a deliberate and intentional undertaking of the parties that trade secrets were to be imparted and accepted as such, and were not to be revealed by the defendant to any third person.

The defendant also argues that his skill necessarily increased during his employment by the plaintiff, and that he could not justly or fairly agree to foreclose the capacity of his stature so enhanced, in the manner contemplated by the contract.

Such was not the object of the agreement, according to its letter or spirit. That which defendant learned and practiced in the plaintiff's employ, necessarily entered into his make-up and caused him to be a more skillful and adept person in his calling, than theretofore he had been. He was free to leave his employment and necessarily to take with him whatever new or greater skills he had acquired as a designer or builder of machines. What he was not free to do, unless his contract is to be treated as a nullity, was to give aid and comfort to the plaintiff's competitors by betraying to them, under any guise, the trade secrets which were not his to sell, but which constituted a valuable element of the plaintiff's equipment; property incidentally, which enabled it to

conduct its own business, and thereby to give employment to other men.

As a more highly skilled artisan than he had been when he took employment with the plaintiff, the defendant was free to apply that skill in helping Lamar to design and build machines according to the Lamar conception; he was constrained by his solemn compact not to impart to Lamar the conceptions of the plaintiff.

It is not necessary to labor the point that inner conflicts were inevitable, because such is not the showing. What the defendant is proved to have done consisted only in imparting to Lamar, and to the other companies named in turn, the trade secrets of the plaintiff.

The subject is treated in the Restatement of Contracts. See Sec. 516, Clause (f), and comment on Clause (f).

Until such time as contracts are no longer to be accorded a recognized status in our law, it is believed that there is nothing reactionary in the view that this defendant must be held to have deliberately and intentionally committed a serious breach of an enforceable written contract into which he freely entered.

For the foregoing important reason the defendant's motion to resettle the interlocutory judgment and findings is denied.

[11] There is an additional reason which has not been relied upon, although it would be sufficient in any case, namely, that the motion was not timely made. It is disingenuously called a motion to resettle, but essentially it is a motion for a wholly different judgment from that which was granted, namely, a judgment in favor of the defendant for the reason stated. If appropriate at all, it should have been made as a motion for a new trial within the 10 days specified by subd. (b) of Rule 59 of the Federal Rules of Civil Procedure. The judgment was entered on December 13, 1943, and this motion is deemed to have been made on January 20, 1944. It presents no allegedly newly discovered evidence, and could not be considered on the merits at all, strictly speaking. It has been so considered, without prejudice to plaintiff's objection on the score that it was not timely, solely because of defendant's default on the trial.

Settle order denying defendant's motions in accordance with the foregoing, and providing a blank space for insertion by the court of the Special Master's allowance.