RENDERED: MARCH 28, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1015-ME

R.G., NATURAL MOTHER                                    APPELLANT


v.          APPEAL FROM SHELBY FAMILY COURT
            HONORABLE S. MARIE HELLARD, JUDGE
            ACTION NO. 23-J-00083-001


CABINET FOR HEALTH AND
FAMILY SERVICES, DIVISION OF
PROTECTION AND PERMANENCY,
COMMONWEALTH OF KENTUCKY;
A.R.V.G., A CHILD; SHELBY
COUNTY PUBLIC SCHOOLS; AND
W.V.                                                   APPELLEES

AND


NO. 2024-CA-1016-ME

R.G., NATURAL MOTHER                                    APPELLANT


v.          APPEAL FROM SHELBY FAMILY COURT
            HONORABLE S. MARIE HELLARD, JUDGE
            ACTION NO. 23-J-00084-001


CABINET FOR HEALTH AND
FAMILY SERVICES, DIVISION OF

PROTECTION AND PERMANENCY,
COMMONWEALTH OF KENTUCKY;
J.V.G., A CHILD; SHELBY COUNTY
PUBLIC SCHOOLS; AND W.V.                              APPELLEES

AND

NO. 2024-CA-1017-ME

R.G., NATURAL MOTHER                                 APPELLANT

v.

APPEAL FROM SHELBY FAMILY COURT
HONORABLE S. MARIE HELLARD, JUDGE
ACTION NO. 23-J-00085-001

CABINET FOR HEALTH AND
FAMILY SERVICES, DIVISION OF
PROTECTION AND PERMANENCY,
COMMONWEALTH OF KENTUCKY;
S.V.G., A CHILD; SHELBY COUNTY
PUBLIC SCHOOLS; AND W.V.                              APPELLEES

AND

NO. 2024-CA-1018-ME

R.G., NATURAL MOTHER                                 APPELLANT

v.

APPEAL FROM SHELBY FAMILY COURT
HONORABLE S. MARIE HELLARD, JUDGE
ACTION NO. 24-J-00006-001

CABINET FOR HEALTH AND
FAMILY SERVICES, DIVISION OF
PROTECTION AND PERMANENCY,
COMMONWEALTH OF KENTUCKY;
R.V.G., A CHILD; SHELBY COUNTY
PUBLIC SCHOOLS; AND W.V.                                    APPELLEES

AND

NO. 2024-CA-1019-ME

R.G., NATURAL MOTHER                                        APPELLANT

APPEAL FROM SHELBY FAMILY COURT
v.          HONORABLE S. MARIE HELLARD, JUDGE
ACTION NO. 23-J-00007-001

CABINET FOR HEALTH AND
FAMILY SERVICES, DIVISION OF
PROTECTION AND PERMANENCY,
COMMONWEALTH OF KENTUCKY;
E.V.G., A CHILD; SHELBY COUNTY
PUBLIC SCHOOLS; AND W.V.                                    APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  COMBS, EASTON, AND LAMBERT, JUDGES.

LAMBERT, JUDGE:  R.G. (hereinafter "Mother") appeals from the Shelby

Family Court's dispositional orders finding her five children to be abused or

-3-

neglected and committing their custody to the Cabinet for Health and Family Services (hereinafter "CHFS"). After careful review of the briefs, record, and law, we affirm the family court's orders and, by separate order, grant Mother's appointed counsel's motion to withdraw.

## BACKGROUND FACTS AND PROCEDURAL HISTORY

On May 3, 2023, the Shelby County Public School System filed dependency, neglect, and abuse (DNA) petitions regarding Mother's three eldest children, J.V.G, S.V.G., and A.R.V.G., who were then 11, 9, and 8 years old, respectively. The petitions asserted that each of the children had at least 15 unexcused absences and 10 unexcused tardies during 2022-2023 academic school year. At the temporary removal hearing, held June 7, 2023, Mother informed the court that one of the children had severe anxiety and that she had medical notes that could reduce the number of unexcused events. The court passed the matter to September 2023. In September, noting that only one child had an unexcused absence for the current school year, the court passed the matter to November 2023 and then again to January 3, 2024.

At the January 3, 2024, hearing Mother was not present, and a representative from the school reported that each of the three children had incurred at least 14 unexcused absences since the last court appearance in November. The school representative requested that Mother be drug screened. Concerned that the

children were at risk of harm, the Court appointed CASA[1] and ordered CHFS to investigate. The court further ordered Mother to submit, at CHFS's expense, to a hair and urine drug screen that day and for her to appear and show cause for the children's absences on January 10, 2024.

The court reconvened the temporary removal hearing one week later on January 10, 2024, and heard testimony from a representative from the school and from the social worker assigned to the family; Mother was again not present. The school representative testified that each of the three children had at least two additional unexcused absences since the January 3, 2024, hearing. He also reported that R.V.G., who started kindergarten after the petitions on the older three children were filed and was therefore not before the court, had 19 unexcused absences for the school year. The representative opined that if the children were left in Mother's care, they would continue to be habitually truant and suffer academically.

The social worker testified that she spoke with Mother by phone on January 3, 2024, after the court ordered CHFS to investigate, and that she showed Mother the court order. She reported that Mother was distrustful and requested that the social worker be accompanied by a police officer when she came to visit the home. The social worker stated that, in response to inquiries about the

_____

[1] Court Appointed Special Advocates.

children's school attendance, Mother explained that she was considering home schooling them and that the children were scared about the removal hearing. The social worker confirmed that she had informed Mother of the court's order to drug screen that day and that a failure to submit would be considered a positive test. She reported that Mother did not test on January 3rd and that, although Mother claimed that she had attempted to screen on the 10th but was denied because she could not pay,[2] Mother had not submitted to a drug test since that date. Finally, the social worker testified that she had informed Mother about the temporary removal hearing.

Based on these interactions, the social worker stated that she was concerned for Mother's mental health and about her possible substance abuse. The social worker proposed that the family receive intensive in-home services and that Mother engage in mental health treatment and submit to drug testing.

The court made detailed findings consistent with the above testimony and determined, by a preponderance of the evidence, that the children would continue to be neglected if left in Mother's care and that reasonable efforts had been made to prevent removal. The court then placed the children in the temporary custody of CHFS and granted Mother supervised visitation.

---

[2] CHFS was only ordered to pay for the January 3, 2024, test.

After the hearing concluded, Mother arrived, and at her request, she was heard by the court. Mother, through counsel, voiced her objection to the children being removed from her custody, and she explained that the children's absences stemmed from the eldest child's anxiety due to bullying at school. The county attorney acknowledged that removal for educational neglect was not the preference, but he argued that there had been no improvement since the case started in May 2023. The court declined to modify its order, noting Mother's lack of cooperation, and further ordered that Mother was to drug screen immediately. The court asked Mother where the children were, and she stated that they were in the home.

The social worker then filed petitions alleging that the two youngest children, R.V.G. and E.V.G., then 5 and 4 years old, respectively, were neglected or abused and requested that emergency custody be granted to CHFS. The petition asserted that one of these two children was being educationally neglected and that both children were at risk of harm. In support, the social worker cited concerns for Mother's mental health and substance abuse due to Mother's admission that she was not treating her diagnosed depression and anxiety disorders, the above-described interaction with Mother while investigating the educational neglect claims on these children's siblings, and Mother's failure to comply with an order to

drug screen. The court granted emergency custody of the two youngest children to CHFS.

Despite knowing that custody of at least the three older children had been granted to CHFS, Mother took the children to Louisville, and she was arrested later that evening on kidnapping charges that were subsequently amended to custodial interference charges. The children were then placed in the physical care and custody of CHFS.

The court held a temporary removal hearing for the two youngest children on January 17, 2024. Mother waived her rights to a formal hearing, and custody of the children remained with CHFS. At Mother's request, due to her incarceration on the pending custodial interference charges, adjudication for all five children was set for May 16, 2024, outside the 45 days required by statute. Kentucky Revised Statutes (KRS) 620.090(5).

At the adjudication hearing, a representative for Shelby County Schools testified, confirming the four eldest children's school attendance record, as detailed above. The school representative also described the school's efforts to remedy the attendance problem, which included mailing Mother a letter after each child's third and sixth unexcused absence, attempting to conduct home visits, though its representatives were unable to make contact, and mailing Mother a final notice about the children's absences. The school representative recalled some

conversations with Mother discussing the possibility of her home schooling the children and acknowledged that this may have been in response to a perceived mental health issue for the children, but he stated that the children had not been withdrawn from the school district. Finally, the school representative testified that there were occasions where Mother was unable to get the children out of the car and into the school, so she took them back home.

The social worker testified consistent with her January 10, 2024, testimony and with the DNA petitions that she filed on the two youngest children. She further recounted to the court Mother's attempt to abscond with the children, and she stated that Mother had again failed to drug screen on January 10th. The social worker acknowledged Mother's claims that the children had mental health issues stemming from bullying that she asserted was the reason for their unexcused absences from school, but the social worker had received no collateral proof that the children were being treated for mental health issues. The social worker denied that Mother's statements about her own anxiety related solely to these court proceedings and stated that she had obtained collateral information that Mother had a history of mental health concerns dating back to when she was teenager.

After making findings of fact consistent with the above, the family court concluded that Mother had inflicted or allowed to be inflicted upon the children physical or emotional injury by other than accidental means, that she had

created or allowed to be created a risk of physical or emotional injury by other than accidental means, and that she had not provided the children with adequate care, supervision, food, clothing, shelter, and education or medical care necessary for the children's well-being, and the children were therefore neglected or abused.

The court held a disposition hearing on August 6, 2024. The ongoing social worker for the family testified as to reunification efforts and her recommendations that Mother complete parenting and mental health assessments, that she drug screen, and that she follow all provider recommendations. The social worker reported that Mother had expressly rejected all attempts to establish a case plan for reunifying with the children before she ultimately ceased all communications with the social worker in late June. Based on the lack of cooperation and contact, the social worker recommended that the children stay in CHFS's custody.

Mother testified and stated unequivocally that she would not work a case plan because the children should not have been removed, it would jeopardize her criminal case, and it was not in either her or the children's best interest. She agreed that she had stopped communications with her social worker, and stated it was because the prior worker made false allegations about her. Mother acknowledged that she could request that the criminal court modify her bond conditions, which prevented all contact with the children, to contact at the family

court's discretion, but she stated that she did not want to see the children until she could take them back home. Mother agreed that she needed psychiatric treatment, but she was adamant that she would do so on her terms and that she would not engage in a mental health assessment at the direction of the family court or CHFS.

On August 8, 2024, the family court entered dispositional orders committing the children to CHFS's custody and ordering Mother to undergo a mental health assessment. Mother, through her appointed counsel, timely appealed. Thereafter, in accordance with *A.C. v. Cabinet for Health and Family Services*, 362 S.W.3d 361 (Ky. App. 2012), Mother's counsel filed an *Anders*[3] brief, attesting that no meritorious issues exist to present to this Court, as well as a motion to withdraw as counsel on appeal. The motion to withdraw was passed to the merits panel. Mother was afforded an opportunity to file a *pro se* brief, but she declined to do so.

## STANDARD OF REVIEW

When appointed counsel files an *Anders* brief, the Court is required to "independently review the record and ascertain whether the appeal is, in fact, void of nonfrivolous grounds for reversal." *A.C.*, 362 S.W.3d at 372. We review the family court's findings of fact under the clearly erroneous standard. Kentucky

---

[3] *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 12 L. Ed. 2d 493 (1967).

Rules of Civil Procedure (CR) 52.01. If supported by substantial evidence, we are "obligated to give a great deal of deference to the [family] court's findings[.]" *D.G.R. v. Commonwealth, Cabinet for Health and Family Services*, 364 S.W.3d 106, 113 (Ky. 2012). Application of the law to the facts, we review *de novo*. *Id.*

**ANALYSIS**

Dependency, neglect, and abuse actions are governed by KRS Chapter 620. A child is deemed to be abused or neglected when, relevantly, his or her parent "creates or allows to be created a risk of physical or emotional injury to the child by other than accidental means[ or d]oes not provide the child with adequate care, supervision, food, clothing, shelter, and education or medical care necessary for the child's well-being when financially able to do so." KRS 600.020(1)(a)2. and (1)(a)8. "[A] determination of dependency, neglect, and abuse shall be made by a preponderance of the evidence." KRS 620.100(3). After a thorough examination of the record on appeal, we conclude that the family court complied with all statutory mandates.

Regarding the court's findings and conclusions, the court's determination that Mother inflicted, or allowed another to inflict, physical or emotional injury on the children is wholly unsupported by the evidence. There was no testimony that the children suffered any physical pain or impairment to

-12-

their physical condition, and no testimony from a qualified mental health professional was produced.  KRS 600.020(26) and (49).

However, despite this error, the court's determinations that Mother failed to provide the four eldest children with necessary education and that all of the children were at risk of physical or emotional injury are amply supported by the record.  Unquestionably, the school age children have had an excessive number of unexcused absences that interferes with their education.  Further, despite her claims that the children's mental health needs are to blame, Mother has provided no proof that she has engaged them in appropriate treatment or that she was reasonably prevented from taking this protective action.  Further, the determination that the children are at risk of injury is supported by evidence of Mother's untreated, documented mental health concerns, her presumed positive drug screens, and her continued failure to cooperate with CHFS's investigation or to comply with court orders.  These same facts support the children's continued commitment to CHFS's custody.

## CONCLUSION

For the forgoing reasons, the orders of the Shelby Family Court are AFFIRMED.

ALL CONCUR.

-13-

BRIEF FOR APPELLANT:

Rebecca A. Smither
Louisville, Kentucky

BRIEF FOR APPELLEE THE
COMMONWEALTH OF
KENTUCKY:

J.R. RoBards
Shelbyville, Kentucky